1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MELISSA W. WOO (SBN 192056)
E-Mail: melissaw@counselatlaws.com
2647 Gateway Road, Suite 105-550
Carlsbad, California 92009
Telephone: 877-787-4855
Facsimile: 877-787-6855

Attorney for Plaintiff, X One X Movie Archive, Inc.

FILED
CLERK, U.S. DISTRICT COURT

NOV 2 0 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

X ONE X MOVIE ARCHIVE, INC.
a Nevada Corporation,

      Plaintiff,

v.

SIGN OF THE TIMES, INC., d/b/a
CRYSTAL ART GALLERY; and
DOES 1-10,

      Defendants.

Case No.:

**CV13-8574 JFW (CWx)**

**COMPLAINT:**

(1) COPYRIGHT INFRINGEMENT;
(2) CONTRIBUTORY COPYRIGHT
INFRINGEMENT
(3) VICARIOUS COPYRIGHT
INFRINGEMENT
(4) BREACH OF CONTRACT

    Plaintiff X One X Movie Archive, Inc., ("X One X"), by and through its undersigned counsel, alleges:

## INTRODUCTION

    1.    X One X is the legal and/or beneficial owner of all copyrights associated with certain artwork titled: *Creature From The Black Lagoon Collection,* U.S. Copyright Registration Number VA 1-309-381 featuring the Creature From the Black Lagoon artwork; and *Invisible Man Returns Collection,* U.S. Copyright Registration Number VA 1-309-473 featuring the Invisible Man Returns artwork. Defendant SIGN OF THE TIMES, Inc. dba Crystal Art Gallery ("SIGN OF THE

TIMES") was a prior licensee of X One X and is infringing on X One X's copyrights by continuing to manufacture products bearing restored artwork provided by X One X and copyrighted by X One X.  SIGN OF THE TIMES is in material breach of the license agreement by and between SIGN OF THE TIMES and X One X ("The License Agreement") by continuing, after the termination of the agreement, to manufacture and sell products based on artwork provided by X One X.

## PARTIES

1.     X One X Movie Archive, Inc. is a corporation duly organized and existing under the laws of the State of Nevada with its principal place of business at 1135 Terminal Way, Suite 209, Reno, NV 89502.  X One X is in the business, among other things, of creating new artistic works in print, graphic and lithographic mediums.  X One X obtains copyrights registered with the United States Copyright Office for its artistic works, and licenses them to third parties.

2.     SIGN OF THE TIMES, Inc. is, upon information and belief, a corporation duly incorporated in California, with its principle office located at 4950 S. Santa Fe Avenue, Vernon, California 90058-3003.

3.     SIGN OF THE TIMES is, upon information and belief, a manufacturer of metal signs, vintage posters, and other decorative items.

4.     X One X does not know the true names and capacities of DOES 1 through 10, inclusive and therefore will sue them under fictitious names.  X One X is informed and believes and thereon alleges that each of these fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that the injuries herein alleged were proximately caused by these Defendants' wrongful conduct.  Plaintiff will amend this Complaint when the true names and

capacities of each fictitiously named Defendant have been ascertained.

5.      X One X is informed and believes and thereon alleges that at all times herein mentioned, the named Sign of the Times and DOE Defendants (hereinafter, "Defendants"), and each of them, were the agents, affiliates, officers, employees, joint venturers, and/or co-conspirators of each of the other Cross-Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of such agency, affiliation, alter-ego relationship and/or employment and in furtherance of a joint venture and/or conspiracy; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

## JURISDICTION

6.      This Court has subject matter jurisdiction over X One X's claims for copyright infringement pursuant to 17 U.S.C. §§ 101, *et. seq*., 28 U.S.C. § 1331, 28 U.S.C. § 1332 and 28 U.S.C. § 1338(a).

7.      This court has supplemental subject matter jurisdiction over X One X's claims for breach of contract and unjust enrichment pursuant to 28 U.S.C. § 1367 because the acts constituting breach of contract by SIGN OF THE TIMES are so related to copyright infringement claim as to form part of the same case or controversy under Article II of the U.S. Constitution.

8.      This Court has personal jurisdiction over Defendants. Defendant SIGN OF THE TIMES, Inc. is a California Corporation with its principle place of business at 4950 S. Santa Fe Avenue, Vernon, California 90058-3003. All

1  defendants transact, solicit, and are doing business within the state of California,
2  and Plaintiff's claims of copyright infringement arise out of Defendants' conduct
3  within the state of California.

4      9.   Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and
5  1400(a).

6

7      **ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

8      10.   On December 2, 2002, X One X received copyright registration for
9  both its Creature from the Black Lagoon Collection ("Creature from the Black
10  Lagoon"), and its Invisible Man Returns Collection ("Invisible Man").  Attached
11  hereto as Exhibit A to the Complaint are copies of the Copyright Registrations and
12  artwork collections.

13      11.   On or about August 4, 1999, X One X and SIGN OF THE TIMES,
14  INC. d/b/a Crystal Art Gallery entered into a Licensing Agreement ("Licensing
15  Agreement I").

16      12.   On or about April 17, 2002, X One X and SIGN OF THE TIMES, Inc.,
17  d/b/a Crystal Art Gallery entered into a Licensing Agreement ("Licensing
18  Agreement II").  Licensing Agreement II, Schedule A, detailed the artwork licensed
19  by X One X to Defendant, which included Creature from the Black Lagoon and The
20  Invisible Man Returns.

21      13.   X One X, as a licensor, granted to SIGN OF THE TIMES, Inc., as
22  licensee, a non-exclusive, non-transferable, license to use Licensor's two-
23  dimensional graphics solely for the manufacture, sale, advertising, and promotion of
24  certain metal signs and collectible products as defined in both the Licensing
25  Agreements.

26

27

28

4

14.   X One X, as a licensor, also granted to SIGN OF THE TIMES access to its image archives, which contain X One X 's copyrighted images, including Creature from the Black Lagoon and Invisible Man.

15.   The term of Licensing Agreement I was three years beginning on or about August 4, 1999 and terminating on August 4, 2002.

16.   The term of Licensing Agreement II was two years beginning on or about April 17, 2002 and terminating on or about April 17, 2004.

17.   Pursuant to section 4 of Licensing Agreement I, "at the termination of Licensee, all rights granted shall revert back to the licensor."

18.   Pursuant to section 17(a) of Licensing Agreement II, "After the expiration or termination of the term, licensee shall have no right to manufacture, offer, sell, ship, advertise, promote and distribute, use or deal with in any way Products or Promotional and Packaging Material."

19.   Defendants did not renew its Licensing Agreement II or sign a new licensing agreement.

20.   On or about May, 2013, X One X discovered Defendant was continuing to use, sell, advertise and distribute products bearing X One X's copyrighted images on their web store. Specifically, Defendant is selling metal signs bearing X One X copyrighted artwork of Creature from the Black Lagoon and Invisible Man.  Attached hereto as Exhibit B is a copy of a screenshot from SIGN OF THE TIMES' website, last visited July 17, 2013.

21.   X One X caused to be purchased items containing its copyrighted artwork of Creature from the Black Lagoon and Invisible Man.  Attached hereto as Exhibit C is a copy of an invoice depicting the sale and offer for sale of products bearing X One X's copyrighted artwork, including, Invisible Man Metal Sign and

Creature from the Black Lagoon Metal Sign.  Attached hereto as Exhibit D is a photo depicting the "Invisible Man Metal Sign" and the back of the sign referencing that the product contains artwork copyrighted by X One X Movie Archive, Inc.

22.    Upon information and belief, all Defendants continue to use, sell, advertise and distribute X One X's copyrighted artwork.

## FIRST CLAIM FOR RELIEF

### (Copyright Infringement — 17 U.S.C. §501)

### X One X Owns Federally Registered Copyrights of Various Creative Works

23.    X One X restates and re-alleges Paragraphs 1 through 21 of this Complaint as though fully set forth herein.

24.    At all times relevant hereto, X One X has been the licensor and owner of the images used in the visual artwork sold, reproduced, distributed, and publicly displayed by Defendants.

25.    For each of the works at issue in this matter, X One X holds a copyright registration certificate from the United States Copyright Office.

26.    Without authorization, Defendants reproduced and distributed the following X One X owned and copyrighted works: *Creature From The Black Lagoon Collection,* U.S. Copyright Registration Number VA 1-309-381 featuring the Creature From the Black Lagoon artwork and *Invisible Man Returns Collection,* U.S. Copyright Registration Number VA 1-309-473 featuring the Invisible Man Returns artwork.

27.    Defendants infringed upon X One X's copyrighted artwork by reproducing, distributing, selling and publicly displaying the works by and through online stores, retail outlets and trade shows without X One X's approval or

1  authorization.

2      28.   Defendants knew the infringed works belonged to X One X and that

3  they did not have permission to exploit X One X's artwork.

4      29.   Defendants knew their acts constituted copyright infringement.

5      30.   Defendants' conduct was willful within the meaning of the Copyright

6  Act.

7      31.   As a result of their wrongful conduct, Defendants are liable to X One

8  X for copyright infringement pursuant to 17 U.S.C. § 501.

9      32.   X One X has suffered, and will continue to suffer, substantial losses,

10  including but not limited to damage to its business reputation and goodwill.

11      33.   Due to Defendants' acts of infringement, Plaintiff has suffered general

12  and special damages in an amount to be established at trial.

13      34.   Due to Defendants' acts of copyright infringement as alleged herein,

14  Defendants, and each of them, have obtained direct and indirect profits they would

15  not otherwise have realized but for their infringement of the copyrights.  As such,

16  Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly

17  attributable to Defendants' infringement to the copyrights at issue in an amount to

18  be established at trial.

19      35.   X One X is entitled to recover damages, which include its losses and

20  any profits Defendant made as a result of its wrongful conduct. 17 U.S.C. § 504.

21  Alternatively, X One X is entitled to statutory damages under 17 U.S.C. § 504 (c).

22      36.   In addition, because Defendants' infringement was willful, the award

23  of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

24      37.   Plaintiff is entitled to recover its attorneys' fees and costs in this matter

25  pursuant to 17 U.S.C. § 505.

26

27                                                              7

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SECOND CLAIM FOR RELIEF

### (Contributory Copyright Infringement)

38.    Plaintiff repeats and re-alleges Paragraphs 1 through 21 of this Complaint as though fully set forth herein.

39.    Numerous individuals and entities directly infringed upon X One X's copyrighted works through purchasing products from SIGN OF THE TIMES, INC. d/b/a Crystal Art Gallery resale.

40.    Defendants knowingly induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing allowing, and assisting others to create, sell and distribute X One X's work.

41.    Defendants had knowledge of the infringing acts relating to X One X's copyrighted artwork.

42.    The acts and conduct of Defendants, as alleged above in this Complaint, constitute contributory copyright infringement.

## THIRD CLAIM FOR RELIEF

### (Vicarious Copyright Infringement)

43.    Plaintiff repeats and re-alleges Paragraphs 1 through 21 of this Complaint as though fully set forth herein.

44.    Numerous individuals and entities directly infringed X One X's copyrighted work.

45.    Defendants had the right and ability to control the infringing acts of the individuals or entities who directly infringed on X One X's copyrighted artwork.

46.     Defendants obtained a direct financial benefit from the infringing activities of the individuals or entities who directly infringed X One X's copyrighted artwork.

47.     The acts and conduct of Defendants, as alleged above in this Complaint constitute vicarious copyright infringement.

## FOURTH CLAIM FOR RELIEF

### (Breach of Contract by X One X against SIGN OF THE TIMES)

48.     X One X restates and re-alleges Paragraphs 1 through 21 of this Complaint as though fully set forth herein.

49.     At all times relevant hereto, under Paragraph 17(a) of Licensing Agreement II provides that: Licensee shall have no right to manufacture, offer, sell, ship, advertise, promote and Distribute, use or deal with in any way Products or Promotional and Packaging Material except as provided in subsection (c) below. Subsection (c) of Paragraph 17 only allows a Licensee to dispose of products which are on its hand or in the process of manufacture for a period of ninety (90) days after expiration of the license provided that advances and royalties with respect to that period are paid and the appropriate statements are furnished for that period.

50.     SIGN OF THE TIMES breached the Licensing Agreement II by continuing to offer, sell, advertise and distribute products in July, 2013, a time period well beyond the sell-off period permitted under Paragraph 17(c) of the Licensing Agreement II.  (See Exhibit B)

51.     As a result of SIGN OF THE TIMES' breach of the License Agreement, X One X has suffered damages, including, but not limited to attorney's fees in the amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**

**(Unjust Enrichment by X One X against SIGN OF THE TIMES)**

52. X One X restates and re-alleges Paragraphs 1 through 21 of this Complaint as though fully set forth herein.

53. X One X conferred a direct benefit to SIGN OF THE TIMES by providing it with access to its artwork.

54. SIGN OF THE TIMES knew and appreciated the benefit of receiving such artwork.

55. SIGN OF THE TIMES manufactured and sold novelty items utilizing artwork provided by SIGN OF THE TIMES and made profits from utilization of the artwork.

56. SIGN OF THE TIMES, however, failed to provide Royalty Payments as required under the License Agreement II.

57. It would be inequitable for SIGN OF THE TIMES to retain all profits for utilization of X One X's artwork.

58. As a result, SIGN OF THE TIMES has been unjustly enriched and is liable to X One X for the profits that it received in connection with utilizing X One X's artwork.

**JURY DEMAND**

59. X One X hereby demands a jury trial in this case.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff X One X Movie Archive, Inc. respectfully requests judgment as follows:

(1) That the Court enter a judgment against Defendants declaring:

    a.  Defendants willfully infringed Plaintiff's rights in federally registered copyrights under 17 U.S.C. § 501,

    b.  Defendants injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

(2) That the Court issue injunctive relief against Defendants, and that Defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, be enjoined and restrained from copying, posting or making any other infringing use or infringing distribution of products bearing the image owned by Plaintiff;

(3) That the Court enter an impoundment pursuant to 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of Plaintiff's copyrighted artwork or other materials, which are in Defendants' possession or control;

(4) That the Court order Defendants to pay Plaintiff's general, special, actual and statutory damages as follows:

    a.  Plaintiff's damages and Defendants' profits pursuant to 17 U.S.C. § 504(b);

    b.  Or, in the alternative, enhanced statutory damages pursuant to 17 U.S.C. § 504(c)(2), for Defendants' willful infringement of Plaintiff's copyrights; and

(5) That the Court order all Defendants to pay damages caused by their breaches of the License Agreement II;

1   (6) That the Court order Defendants to pay Plaintiff both the costs of this action

2        and the reasonable attorney's fees incurred by it in prosecuting this action

3        pursuant to 17 U.S.C. § 504.

4   (7) That the Court grants to Plaintiff such other and additional relief as is just and

5        proper.

6

7

8   Dated: November 20, 2013                    Respectfully submitted,

9

10                                                /s/ Melissa W. Woo

11                                                MELISSA W. WOO
                                                  Attorney for Plaintiff
12                                                X ONE X MOVIE ARCHIVE, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                                                      12

28

# Exhibit A

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, United States Code,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form VA**
For a Work of the Visual Arts

VA 1-309-381

**EFFECTIVE DATE OF REGISTRATION**

DEC 02 2002

Month        Day        Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

## 1

**Title of This Work ▼**

Creature From The Black Lagoon Collection

**NATURE OF THIS WORK ▼ See Instructions**

Artwork

**Previous or Alternative Titles ▼**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼        Number ▼        Issue Date ▼        On Pages ▼

## 2

**a**

**NAME OF AUTHOR ▼**

X one X Movie Archive

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

**NOTE**

Under the law the "author" of a "work made for hire" is generally the employer not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part and leave the space for dates of birth and death blank.

**Was this contribution to the work a "work made for hire"?**
☑ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ___USA___
Domiciled in _____

**Was This Author's Contribution to the Work**
Anonymous?        ☐ Yes  ☑ No
Pseudonymous?     ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate box(es) See Instructions
☐ 3-Dimensional sculpture    ☐ Map               ☐ Technical drawing
☑ 2-Dimensional artwork      ☐ Photograph        ☐ Text
☑ Reproduction of work of art ☐ Jewelry design   ☐ Architectural work

**b**

**Name of Author ▼**

**Dates of Birth and Death**
Year Born ▼        Year Died ▼

**Was this contribution to the work a "work made for hire"?**
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of _____
Domiciled in _____

**Was This Author's Contribution to the Work**
Anonymous?        ☐ Yes  ☐ No
Pseudonymous?     ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate box(es) See Instructions
☐ 3-Dimensional sculpture    ☐ Map               ☐ Technical drawing
☐ 2-Dimensional artwork      ☐ Photograph        ☐ Text
☐ Reproduction of work of art ☐ Jewelry design   ☐ Architectural work

## 3

**a**

**Year in Which Creation of This Work Was Completed**
1998
This information must be given in all cases.

**b**

**Date and Nation of First Publication of This Particular Work**
Complete this information ONLY if this work has been published.
Month May        Day 10        Year 1998        USA        Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

X one X Movie Archive
1135 Terminal Way #209 Reno, NV 89502

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

See instructions before completing this space.

**APPLICATION RECEIVED** DEC 02 2002
**ONE DEPOSIT RECEIVED** DEC 02 2002
**TWO DEPOSITS RECEIVED**
**FUNDS RECEIVED**

DO NOT WRITE HERE

---

**MORE ON BACK ▶**
• Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions.
• Sign the form at line 8

DO NOT WRITE HERE
Page 1 of ___ pages

MAY 13 2005
MAY 13 2005

EXAMINED BY

CHECKED BY

☒ CORRESPONDENCE
Yes

FORM VA

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application

If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

  Movie Posters

b. Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed ▼

  changes and additional art work added to pre existing work

**6**

a

See instructions
before completing
this space

b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼                                    Account Number ▼

**7**

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent  Name/Address/Apt/City/State/ZIP ▼

X one X Movie Archive Inc
1135 Terminal Way #209
Reno. NV 89502

Area code and daytime telephone number   ( 800 ) 278-4850          Fax number   ( 888 ) 800-4855

Email

b

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

check only one ▶  ☐ author
                  ☐ other copyright claimant
                  ☐ owner of exclusive right(s)
                  ☒ authorized agent of  X one X Movie Archive
                     Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Leo Valencia                                          Date  5/9/1?

Handwritten signature (X) ▼

X

**8**

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
X one X Movie Archive Inc

Number/Street/Apt ▼
1135 Terminal Way #209

City/State/ZIP ▼
Reno, NV 89502

YOU MUST:
• Complete all necessary spaces
• Sign your application in space 8

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money
   order payable to Register of Copyrights
3. Deposit material

MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: August 2003—30,000  Web Rev: June 2002  ⊛ Printed on recycled paper                    U.S. Government Printing Office: 2003-496-605/60,029



# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form VA**
For a Work of the Visual Arts

**VA 1–309–473**

**EFFECTIVE DATE OF REGISTRATION**

**DEC 02 2002**
Month     Day     Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**
Title of This Work ▼
Invisible Man Returns Collection

NATURE OF THIS WORK ▼ See instructions
Artwork

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

**2**
**a**
NAME OF AUTHOR ▼
X one X Movie Archive

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of _USA_
     Domiciled in

Was This Author's Contribution to the Work
Anonymous? ☑ Yes ☐ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☑ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☑ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

**b**
Name of Author ▼

Dates of Birth and Death
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of
     Domiciled in

Was This Author's Contribution to the Work
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

**3**
**a** Year in Which Creation of This Work Was Completed
1998
Year in all cases

This information must be given ONLY if this work has been published.

**b** Date and Nation of First Publication of This Particular Work
Complete this information
Month May    Day 10    Year 1998    Nation USA

**4**
COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
X one X Movie Archive
1135 Terminal Way #209 Reno, NV 89502

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
MAY 13 2005    DEC 02 2002
ONE DEPOSIT RECEIVED
MAY 13 2005    DEC 02 2002
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ____ pages

17



EXAMINED BY

CHECKED BY

CORRESPONDENCE
Yes

FORM VA

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☑ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

Movie Posters

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

changes and additional art work added to pre existing work

**6**

a
See instructions
before completing
this space

b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼          Account Number ▼

**7**

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

X one X Movie Archive Inc
1135 Terminal Way #209
Reno, NV 89502

b

Area code and daytime telephone number ( 800 ) 278-4850          Fax number ( 888 ) 800-4855

Email

**CERTIFICATION** I, the undersigned, hereby certify that I am the

check only one ▶ ☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  X one X Movie Archive
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Leo Valencia          Date 5/4/65

Handwritten signature (X) ▼

Certificate
will be
mailed in
window
envelope
to this
address

Name ▼
X One X Movie Archive Inc

Number/Street/Apt ▼
1135 Terminal Way #209

City/State/ZIP ▼
Reno, NV 89502

**9**

Library of Congress
Copyright Office
101 Independence Ave. S.E.
Washington, D.C. 20559-6000

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: August 2003   30,000   Web Rev: June 2002   ⊕ Printed on recycled paper          U.S. Government Printing Office: 2003-XXX-XXX/XX,XXX



# Exhibit B



*2533 North Carson Street Suite 5049 Carson City, NV 89707*
*Tel. 800-278-4850 Fax. 888-800-4855*
*email x1xmovie@earthlink.net*

---

## LICENSING AGREEMENT

This agreement hereby is entered into by and between X one X Movie Archive Inc., which has it's principal offices at 2533 North Carson Street, Suite S049, Carson City, NV 89706 Tel: 800 278-4850 Fax: 888-800-4855 (hereafter, the "Licensor"), and (hereafter, the " Licensee"). Crystal Art 3359 East Vernon Street, Vernon, California  323 581-6617   323 587-7004

Whereas:

   a.  The Licensor owns or otherwise controls certain rights, title and interests in various authentic entertainment artwork properties (hereafter, the " properties"); and

   b.  The licensee desires to use the images of those Properties in connection with (see paragraph 5) product to be licensed (hereafter, the "Product"); and

   c.  The Licensor is willing to license its rights, title and interest in the Properties on the terms and conditions set forth below:

1.  **RIGHTS AND LICENSE GRANTED:**
    X one X  Movie Archive Inc., grants a non-exclusive, non-transferable and non-assignable license, without the right to grant sub-licenses, to use authentic original restored artworks for reproduction, manufacture and sale of these authentic artworks.  All rights into the artwork property(s) provided not expressly granted to Licensee shall remain exclusive rights of X one X Movie Archive Inc..

2. **ARTWORK PROPERTIES TO BE LICENSED:**
This grant of rights shall include the images set forth in or otherwise associated with the following authentic movie title artwork created by the studios as publicity artworks during the term of this agreement.

      1. Mysterious Lady
      2. King Kong
      3. Join The Navy
      4. Duck Soup
      5. A Haunting We Will Go
      6. Oceans 11
      7. Per Qualche Dollaro in Piu
      See addendum for additional requested selections:

3. **EXCLUSIVE PROVIDER:**
In goodwill consideration to X one X Movie Archive Inc. for complete and open disclosure of all artwork, Licensee understands and agrees that the images provided may be of extremely rare and valuable nature, including artwork which may be in the public domain. Licensee agrees to waive any right to reproduce the artworks submitted/ reviewed by Licensee in the present or future. Other than the rights granted in this agreement regarding vintage movie title artworks as well as vintage advertisements submitted for review.

4. **TERM OF THE GRANT OF RIGHTS:**
The Term of this grant of rights shall begin upon the execution of this agreement by both parties for the period of 3 years from the date of signing, by both parties. At the termination of Licensee all rights granted shall revert back to the Licensor. All plates film and files shall be turned over to X one X Movie Archive Inc.

5. **AUTHORIZED PRODUCT TO BE LICENSED:**
The Licensee shall be entitled to use the images of the properties detailed below in connection with the licensee's production and distribution for the usage. The licensee shall be entitled to reproduction usage of the images of the authentic publicity movie title artworks that were originally authorized by the actors, studios, creators and the National Screen Service Bureau. No new original creations will be authorized. The product authorized are listed below. Any derivative designs or enhancement will be the property of Licensor all files and film shall be turned over to Licensor upon expiration of license. Please send a sample of each product listed below for final product category approval.
    **Product Items to be produced:** Upon further approval.
    1. Metal Signs

6. **TERRITORY GRANTED:**
   The territory in which the Licensee shall be able to sell licensed product shall be the United States (to include its territories, possessions and military bases).

7. **MARKETS EXCLUDED:**
   **THE FOLLOWING SALES VENUES**:
   1. All Direct response groups.
   2. Excluding Internet
   3. Mail Order
   4. Swamp Meets

Licensee shall discontinue selling X one X properties to any vendor who is selling by these methods or by the request of X one X Movie Archive Inc.

8. **NON-TRANSFERABILITY:**
   Absent the express permission of the Licensor, the Licensee may not sub-license, assign or otherwise transfer the rights hereunder to any third party. The foregoing, however, shall not prevent the Licensee from having the products manufactured by a third party provided that ('i) the licensee first provides the Licensor with the name of the actual manufacturer, and (ii) all finished products are marketed through and under the name of the Licensee.

9. **ARTWORK  PROVIDED FOR REPRODUCTION:**
   X one X  Movie Archive Inc., agrees to provide the artwork in digital format or transparency form in accordance to the manufacturing specifications. Licensee  agrees to notify X one X  Movie Archive Inc., of the time and the place of  manufacturing.  Along with the quantities intending to produce including the number of overruns shall be accounted for.  All artwork provided to Licensee must be returned or be charged $1000.00 replacement charge per transparency. Artwork should be returned when usage is no longer necessary.

10. **ART & FILM SEPARATIONS:**
    X one X  Movie Archive Inc., can provide completely restored and color enhanced, scanned finished digital files or color separated for any manufacturing application including camera ready film positives or negatives for an additional cost of $750.00 per image.

11. **APPROVAL RIGHTS:**
Licensor shall have the right of final artistic approval over any image which the licensee proposes to use on a designated product. The Licensor, however, must exercise this approval within10 business days of receipt of material. X one X Movie Archive Inc. shall make note on all artwork corrections in writing upon presentation of one production sample. All products must be submitted for final approval before released and signed off by Licensor . Including all advertisement display and packaging materials.

12. **EXPLOITATION OF LICENSE:**
During the term of this license the licensee has a fiduciary duty to commercially exploit the license during the entire duration. Marketing and Ship date: The licensee shall manufacture, market and solicit the product to be licensed (see paragraph 5) from the date agreed upon (see paragraph 16), or all rights will revert back to X one X Movie Archive Inc.

13. The Licensee shall have the opportunity to purchase the products produced by licensee at a price set by it's lowest invoiced vendor.  Licensor shall not sell or solicit any vendor which would directly compete with licensee current accounts.

14. **ROYALTY ADVANCE:**
Licensee will pay X one X Movie Archive Inc., $1,000 per artwork selected under this agreement which may or may not have been listed in this agreement at the  time of signing but by request of additional artwork as needed. Advance shall be paid upon signing of this agreement. The advance shall be credited against future royalties and is non-refundable.

15. **GRANT OF RIGHTS FOR SELECTION:**
Licensee shall have the right to select additional artwork which is available for licensing which has not been listed in this agreement  from X one X as deemed needed by Crystal at a minimum of 5 images per selection.

16. **RELEASE OF ARTWORK:**
Products of images selected shall be released within a six month period from written selection and or from the signing of this agreement. If a work is not released within six month on or before the  following designated marketing dates of promised release dates all rights will revert back to Licensor and risk grounds of termination of License.

17. **FORCE MAJEUR:**
Any delay in performance caused by circumstances beyond the reasonable control of a party such Acts of God, labor disputes or the like, shall excuse Crystal Art Gallery by the length of time equal to the delay caused by the circumstances beyond Crystal Art Gallery control.

18. **MARKETING / SALES  ADVERTISING PLAN:**
This should be submitted by Licensee upon review of this agreement or attached to this agreement for approval by Licensor.

19. **DISCOUNTING FROM ESTABLISHED GROSS WHOLESALE MINIMUM:**
Each unit produced must not be discounted more than 20% from this pre-established wholesale price point to it's retail vendors. As to protect the integrity of the property and other licensed products. Furthermore, there should not be more than 30% of total sales or shipped products discounted. In the event of liquidation sale or bankruptcy the  Licensee shall be responsible for a royalty rate at established market values listed in the Licensee price sheets and not based at liquidation pricing. In the event of insolvency this agreement shall be deemed immediately terminated and no reproduction rights shall be granted any further.

20. **ROYALTLY RATES:**
The Licensee agrees to pay a royalty rate to X one X Movie Archive Inc., calculated at gross wholesale(net sales) invoiced price to each retail vendor for each product shipped (not including shipping costs, handling, sales tax) for every sold(net sales)product of 12% orders shipped F.O.B.  All royalties are calculated at net sales invoice price on finished and packaged goods actually sold. Net sales meaning less discounts or returns actually credited to each vendor based from gross wholesale invoiced price.

21. **GUARANTEE:**
The Licensee agrees to pay a guarantee of *Two thousand dollars (*$2,000) per metal sign during the term of this agreement. This guarantee will commence upon the release date or at the end of the term of the agreement which ever comes first.

22. **ROYALTY REPORTS:**
The licensee shall submit a quarterly royalty report to the licensor within thirty (30) days after close of each calendar quarter. The royalty statements shall include the quantity of licensed goods which the licensee sold.
*Audit Rights:* The licensee shall keep accurate books and records of all transactions made pursuant to this agreement. The licensor and any of its duly designated representatives shall have the right, upon (72) hour notice and during reasonable business hours, to examine such books and records.

23. **STATEMENTS AND PAYMENTS:**

(a)   Licensee (Crystal Art Gallery) shall provide Licensor (X one X Movie Archive Inc.) within thirty (30) days after the end of each calendar quarter (The "Royalty Period"), a complete and accurate statement of its sales of Products for the Royalty Period.  Said statement shall be certified as accurate by the Licensee and include the number, description and Gross Wholesale Price of each Product (including each separate type, style and kind of Product) sold during the Royalty Period, information as to discounts given and returns actually credited and any other information Licensor (X one X Movie Archive Inc.) may from time to time request.  Statements shall be furnished to Licensor (X one X Movie Archive Inc.) whether or not any Products have been sold and whether or not Royalties have been earned during the Royalty Period.  Statements shall be in the form acceptable to Licensor (X one X Movie Archive Inc.).  The amount due to Licensor (X one X Movie Archive Inc.) for the Royalty Period shall be paid simultaneously with the submission of such statement.  All payments shall be in such currency as is specified in the Agreement.  If no other currency is specified in the Agreement, all payments shall be in United States currency drawn on a United States bank.  In no event shall the amount credited for returns during any Royalty Period exceed the Licensee's  Royalty obligation for such Royalty Period or be used as a credit against past or future Royalty obligations of the Licensee.

(b) Licensee shall send all statements and payments to Licensor (X one X Movie Archive Inc.) at its address listed in the heading of this Agreement unless otherwise specified in the Basic Provisions hereof. Licensor (X one X Movie Archive Inc.) Reserves the right to change its designation of the recipient of payments and statements including its designation of: ('i) agent; (ii) agent's address; (iii) Licensor (X one X Movie Archive Inc.)address by giving a written notice thereof to Licensee.

(c) The receipt or acceptance by Licensor (X one X Movie Archive Inc.) of any statement or payment (or its cashing of any Royalty checks) shall not preclude Licensor (X one X Movie Archive Inc.) from questioning the correctness thereof at any time and any inconsistencies or mistakes shall immediately be rectified.

(d) Time is of the essence with respect to all payments to be made hereunder by Licensee, and interest at a rate of twelve (12%) percent per year, compounded daily, or, if less, the maximum lawful interest rate, shall accrue from the date payment is due until the date payment is received.  The preceding provision shall also apply to any amounts found to be unpaid following an examination of Licensee's books and records.

24. **SAMPLES:**
Licensee will provide five complementary samples of each approved product produced under this agreement.

25. **TRADEMARK DISCLAIMER NOTICES:**
Notices of product origination. All Products shall set forth a notice of the originating source of the products. Such product produced must contain a visible disclaimer of originating source of the product. The disclaimer should state to the affect that this product is authentic but is not currently associated or affiliated with any past movie studio which may be described within the artwork. All marketing material as well as sales material must emphasize the movie title works which contain the top three or four principle actors listed.

26. **COPYRIGHT NOTICES:**
For those Properties in which the Licensor owns all rights, title and interest in the copyright, the Licensee shall indicate such copyright notice on its Products. It shall be the Licensor's responsibility, though, to advise the Licensee in writing as to the Properties in which it owns all rights, title and interest.

27. **X ONE X MOVIE ARCHIVE COPYRIGHT NOTICES:**
To each product produced must contain: All restored artworks are property of X one X Movie archive Inc. 1999 @

28. **LICENSOR'S INDEMNIFICATION OF THE LICENSEE:**
X one X Movie Archive hereby hold Licensee harmless against any and all claim, losses, awards, damages, decrees, settlements, judgments of claims of copyrights infringement to all artwork provided by X one X Movie Archive Inc., arising from licensee's exercise of any of it's rights granted by this agreement. This shall include ~~but not limited to~~ any such ~~valid~~ actions AND ALL 𝒞 instituted against Licensee by any third party for alleged copyright, and/or trademark or unfair competition. X one X Movie Archive agrees to pay reasonable attorney's fees. X one X Movie Archive promises to intervene aggressively on behalf of Licensee from all formally notified claim or served Summons and Complaint in suit. All notices by third parties must be sent to X one X Movie Archive Inc., as " time is of the essence". Failure to do so within 10 days of first mailed notice will void any promises made herein. All notices must be mailed via next day air certified and must be faxed and emailed to www. leo x1xmovie @ earthlink. net to: Fax 888-800-4855 Tel: 800 278-4850. Furthermore Licensee agrees to communicate by phone or email within 48 hours of being formally notified.

29. **AUDIT RIGHTS:**

Licensee shall keep accurate books of the account and records at its principal place of business covering all transactions relating to the license granted herein. X one X Movie Archive Inc., and its duly authorized representatives shall have the right, during reasonable business hours, to examine the licensee said books of account and records annually or when deemed necessary. If any underpayment is greater than 2% during any Royalty Period, the licensee shall reimburse X one X for all costs and expenses for such audit and any legal or otherwise to collect such owed revenue. All books of account and records of Licensee covering all transactions relating to the License shall be retained by the Licensee until at least 2 years after the expiration or termination of term for possible inspection.

30. **WARRANTIES:**

The Licensee hereby indemnifies and agrees to hold X one X Movie Archive harmless against all damages, fines, judgments and expenses, including reasonable attorney fees, arising out of claims or suits which may be brought by any third party, by reason of unauthorized use by Licensee in connection with any products manufactured, as well as any alleged defects or inherent dangers in the product.

31. **RELATIONSHIP OF PARTIES:**

This relationship does not create a partnership nor joint venture between the parties.

32. **SURVIVAL RIGHTS:**
Notwithstanding anything to the contrary contained herein, any and all
obligations shall remain in full force.

33. **ENTIRE AGREEMENT:**
This agreement represents the understanding of both parties any
amendment or additions to this agreement shall be only
made in writing and signed off by both parties.

Agreed And Accepted

Xone X Movie Archive, Inc.

By:_____
     Leo Valencia

Title:_____

Date: _____

Federal ID#: _____

Titles:

Licensee

By:_____

Title: _____1st Licensor_____

Date: ____8/4/99____

9    29

# Exhibit C



*2533 North Carson Street Suite S049 Carson City, NV 89706*
*Tel. 800-278-4850 Fax. 888-800-4855*
*Email avenuela@earthlink.net*

## LICENSING AGREEMENT

This agreement hereby is entered into by and between "X one X Movie Archive Inc."
A Nevada Corporation since 1995 At 2533 North Carson Street, Suite S049, Carson City,
NV 89706 Tel: 800 278-4850 Fax: 888-800-4855  (the "Licensor"), and "Sign of the Times".,
a California Corporation, with offices at 3359 East Vernon., Los Angles, Ca. 90058 Tel:
(323) 581-6617  Fax (323) 581-6693
(collectively, the " Licensee " )"

### 1. RIGHTS AND LICENSE GRANTED:

X one X Movie Archive Inc. hereby grants to Licensee an non-exclusive non-transferable and
non-assignable license, ("a two dimensional graphics, of all artwork contained  within the
archives of X one X Movie Archive ( the "Artwork,")," without the right to grant sub-
licenses unless approved in writing by Licensor and attached as addendum to this agreement.
Licensor grants the right to use the Artworks solely for the manufacture, sale, advertising and
promotion (collectively "Sale") of the Products solely. "Products" meaning collectible
products to include, but not limited to: Metal Signs. All rights in and to the Artworks not
expressly granted to Licensee hereunder shall remain with Licensor.  Licensor grants the right
to distribute and sell worldwide.  Nothing in this agreement shall limit or restrict the Licensee
or its representatives in which the Products may be manufactured packaged or sold by
Licensee. Licensor warrants and represents that it owns or otherwise controls certain
exclusive rights of the Artworks and has the power and authority to grant to Licensee all
rights and privileges granted to Licensee under this agreement. Licensee understands and
agrees that in the thousands of artworks contained within the archive some artworks within
the X one X Movie Archive are of extremely rare and very valuable nature and that some
artworks may exist only in a few private collections around the world as well as some
elements of the artworks may be in the public domain of which may only be available though
X one X Movie Archive.

## 5.  AUDIT:

(a)  Licensee shall keep accurate books of account and records at its principal place of business covering all transactions relating to the License granted herein. Licensor and its duly authorized representatives shall have the right, during reasonable business hours, to examine Licensee's said books of account and records and all other documents and material relating to the subject matter and the terms of this Agreement and to make copies and extracts thereof.  If any underpayment is greater than $500.00 for any Royalty Period, the Licensee shall reimburse Licensor for the reasonable costs and expense of such audit.

(b)  Upon request by Licensor during an audit, but not more than once each year, Licensee shall, at its own cost, furnish to Licensor within thirty (30) days after such request a detailed statement, should be certified by officer of the company, setting forth the number of Product manufactured from the later of the Commencement of this Agreement or the date of any previous such statement up to and including the date of Licensor request therefore and also setting forth the pricing information for all Products (including the number and description of the Products) shipped, distributed or sold by Licensee during the aforementioned time period.

(c)  All books of account and records of Licensee covering all transactions relating to the License shall be retained by the Licensee until at least two (2) years after the expiration or termination of the Term for possible inspection by Licensor

## 6.  QUALITY, NOTICE, APPROVALS, AND SAMPLES:

(a)  The quality of the Products and all promotional, advertising and packaging material which includes the Property or the Trademarks (the "Promotional and Packaging Material") shall be at least as high as the best quality of similar products and promotional, advertising and packaging material presently shipped, distributed, sold or used by Licensee in the Territory and shall be in full conformance with all applicable laws and regulations. Licensee may not manufacture, use sell, advertise, promote, ship or distribute any Product nor Promotional and Packaging Material until it has been approved in writing by Licensor.  Such approval may be granted or withheld as Licensor, in its sole discretion, may determine.  Licensor failure to approve in writing a submission by the  Licensee within fourteen (14) days from the date Licensor receives such submission shall be deemed disapproved.  Licensor agrees to act in a timely manner to review each submission. In each case of  disapproval Licensor shall express corrections in writing as to approve the product.  Licensor promises to act in a fast and reasonable manner within five-day period. The license shall have every opportunity  to overcome every objection at according to each given situation.

2. TERM OF RIGHTS; EXTENSIONS AND AUTOMATIC RENEWAL:

The Term of this grant of rights shall begin upon execution of this agreement by both parties for a period of two years from date of signing with deposit of guarantee. Licensee is hereby granted successive two (2) year options to extend the Term under the same terms and conditions. Each option must be exercised by notifying X one X Archive in writing at least sixty (60) days prior to the expiration of then current Term. As precondition to Licensee's effective exercise of any such option, Licensee must fully performed all of its obligations hereunder, including the payment of all payments due, and the Royalty for the then current term.

3. ROYALTY PROVISIONS:

(a) Royalties shall be paid by Licensee to the Licensor on all Products produced by Licensee, even if not invoiced or billed (such as introductory offers, samples, promotions and the like in excess of commercially reasonable quantities to prospective customers, and sales to affiliates, associates or subsidiaries of Licensee), and shall be based upon Licensee's Gross Sales for such relative licensed Products during the period sold.

(b) Royalty Rates: The Licensee agrees to pay a royalty rate of 12% on all products manufactured. This rate royalty should include all seconds under the common law of diminishing returns.

(c) Guarantee Minimum Royalty shall be two thousand U.S. dollars per product category, per design per title. See "Schedule A" for artwork names, titles to be confirmed within 10 days of signing and advance.

(d) Licensee shall pay the Licensor on execution of this Agreement, the sum of sixteen thousand dollars on execution of this agreement a non-refundable Advance against Royalties ("Advance") specified in the agreement. For the Basic Term and each Term Extension period, if any, Licensee shall pay the Licensor, a non-refundable, "Royalty" in the amount of 12% of gross sales during the term. If, upon termination or expiration of the Term, the total Royalties paid by Licensee to Licensor during the period of the Term immediately preceding expiration or termination, including the Advance, is less than the Guaranteed Minimum Royalty for such period, Licensee shall immediately pay such difference to the Licensor. The advance made for any period of the Term (e.g. Basic Term or any Term Extension period) shall be credited against the Guaranteed Minimum Royalty for such period of the Term.

(e) "Gross Sales" shall mean Licensee's invoiced billing price to its customers or distributors less return for all damaged goods excluding shipping charges, sales taxes, prompt payment discounts and advertising allowances, trade discounts from shipping invoice. No other deductions shall be allowed in computing the "Gross Sales" whether for cash or other discounts, commissions, uncollectible accounts, taxes, fees, assessments, impositions, payments or other operating expenses of any kind.

33

## 4. STATEMENTS AND PAYMENTS:

(a) Licensee shall provide Licensor within thirty (30) days after the end of each calendar quarter (the "Royalty Period"), a complete and accurate statement of its sales of Products for the Royalty Period. Said statement shall be certified as accurate by the Licensee and include the number, description and Gross Wholesale Price of each Product (including each separate type, style and kind of Product) sold during the Royalty Period, information as to discounts given and returns actually credited and any other information Licensor may from time to time request. Statements shall be furnished to Licensor whether or not any Products have been sold and whether or not Royalties have been earned during the Royalty Period. Statements shall be in the form acceptable to Licensor. The amount due Licensor for the Royalty Period shall be paid simultaneously with the submission of such statement.

(b) All payments shall be in such currency as is specified in the Agreement. If no other currency is specified in the Agreement, all payments shall be in United States currency drawn on a United States bank. In no event shall the amount credited for returns during any Royalty Period exceed the Licensee's Royalty obligation for such Royalty Period or be used as a credit against past or future Royalty obligations of the Licensee. See form attachment.

(c) Licensee shall send all statements and payments to Licensor at its address listed in the heading of this Agreement unless otherwise specified in the Basic Provisions hereof. Licensor reserves the right to change its designation of the recipient of payments and statements including its designation of: (i) agent; (ii) agent's address; (iii) Licensor address by giving written notice thereof to Licensee.

(d) The receipt or acceptance by Licensor of any statement or payment (or its cashing of any Royalty checks) shall not preclude Licensor from questioning the correctness thereof at any time and any inconsistencies or mistakes shall immediately be rectified within 30days of notification to licensee during the term of the license.

(e) Time is of the essence with respect to all payments to be made hereunder by Licensee, and interest at a rate of twelve (12%) percent per year, compounded daily, or, if less, the maximum lawful interest rate, shall accrue from the date payment is due until the date payment is received. The preceding provision shall also apply to any amounts found to be unpaid following an examination of Licensee's books and records. Licensee shall have a ten-day grace period to cure or remedy any correction.

(b) Before commencing or authorizing third parties to commence the design or development of new Products or product categories of Promotional and Packaging Material which have not been previously approved in writing by Licensor for consideration to added to the existing license, Licensee shall submit at its own cost to Licensor for approval the following material in the following sequence:  (i) a description of the concept, including full information on the nature and function of the proposed item and a general description of how the Artwork, Trademarks and other material will be used thereon; (ii) complete layouts and descriptions of the proposed Products and Promotional and Packaging Material showing exactly how and where the Artwork.  Trademarks and all other artwork and wording will be used;  (iii) pre-production models or prototype samples of the proposed Products and Promotional and Packaging Material; and (iv) actual production samples of the proposed Products and Promotional and Packaging Material (the "Production Samples") Licensee shall not proceed beyond any stage where approval is required without first securing such approval requirements shall constitute a material breach of this agreement.  No such approval by Licensor shall act to waive, diminish or negate Licensee's indemnification to Licensor as set forth below.  At any time during the Term and for a period of one year thereafter, upon Licensor request therefore, Licensee shall provide Licensor with a listing of the names and addresses of Licensee's third party manufacturers, and, if additionally requested by Licensor, a copy of Licensee's agreement with any such manufacturer. Licensee shall enjoy exclusive License to final approved artworks during the term of the agreement.

(c) All Products and all Promotional and Packaging Material shall contain permanently affixed, non-removable appropriate legends, markings and notices as required from time to time by Licensor, to give appropriate notice to the public of Licensor rights therein. Unless otherwise expressly approved in writing by Licensor or until such time as Licensor advises Licensee otherwise, each usage of the Trademarks shall be followed by either the TM or the '® Trademark Notice symbol or the word "Trademark," as appropriate, and initially the notices and legends as set forth as follows: "(All restored artwork is based from original movie publicity posters.  All restored designs are property of X one X Movie Archive. Inc. © 2002 Licensed by "Sign of the Times". This product is not affiliated with "Paramount Picture" i.e. "War of The Worlds"); this notice shall appear for each artwork selected for product sales, shall appear at least once on each Product and on each piece of Promotional and Packaging Material.

(d) Where patent protection is either pending or has been granted for any portion of the Property, the Licensee shall further include the appropriate patent notice on all Products and on all pieces of Promotional and Packaging Materials.

(d)  To assure that the provisions of this Agreement are being observed, Licensee shall allow Licensor or its designees to enter Licensee's premises and, to the extent within Licensee's power, the premises where the Products are being manufactured during regular business hours and upon not less than five (5) days notice, for the purpose of inspecting the Products and Promotional and Packaging Material and the facilities in which the Products and Promotional and Packaging Material are being manufactured and in which the Products are being packaged. If the quality standards or trademark, patent and copyright usage and notice requirements  herein above referred to are not met or maintained throughout the Term then, upon receipt of written notice from Licensor, Licensee shall immediately discontinue all Sales or other activity  or dealing with the non-conforming Products or Promotional and Packaging Material.

## 7.  ARTWORK:

(a)  The form and content of all artwork for use in all media shall be submitted to Licensor for its prior written approval.  Licensee shall also submit to Licensor for approval, samples of the proposed use on each Packaging Material of such artwork, even if the artwork itself has already been approved.

(b)  All artwork and designs involving the Property or Trademarks shall, notwithstanding their invention or use by Licensee, be and remain the property of  Licensor who shall be entitled to use and license others to use such artwork and designs, subject to the provisions of this Agreement.

(c)  Licensor shall transfer all selected artwork requested by Licensee within 10 days from execution of agreement. All subsequent artwork, shall be delivered within the same time period during the term of agreement. The format required for manufacturing is to be provides in writing to Licensor i.e. required Raw RGB Files at 175 lpi at 11 X 14.

## 8.OWNERSHIP OF RIGHTS:

(a).  As between Licensor and Licensee, all right, title and interest in the Artwork are reserved by Licensor for use except for the rights Specifically licensed to Licensee hereunder.

(b).  No license other than for Sale of the Products in the Territory is being granted hereunder,  and Licensor reserves for use as it may determine all other rights of any kind.

(a)  Licensee shall not use Licensor name, the Artwork or artists, or names other than as permitted hereunder and, in particular, shall not incorporate Licensor name, the artwork in Licensee's in Licensee's corporate or business name in any manner whatsoever. Licensee will in no way represent that it have any right, title or interest in the Artwork other than those expressly licensed to Licensee hereunder.  Licensee will not use or authorize the use, either during or after the Term, of any configuration, trademark, trade name or other designation confusingly similar to properties granted Licensor name, the Property or the Trademarks.

36

## 9.  GOOD WILL AND PROMOTIONAL VALUE:

(a)   Licensee recognizes the value of the good will associated with the Property Artwork and the Trademarks and acknowledges that the Property, and all rights therein and the good will pertaining,  thereto belong exclusively to Licensor and the Licensee acknowledges that the Property and the Trademarks have acquired Secondary meaning in the mind of the public.  Licensee will not attack the title or any rights of Licensor in the Property or the Trademarks or, the validity of the License being Artworks, granted herein either during or after the Term.

(b)  Licensee's use of the Artwork Property and the Trademarks shall inure to the benefit of Licensor and Licensee shall not, at any time, acquire any rights in the Property or the Trademarks by virtue of such use.

(c )  Licensee acknowledges that: (i) Licensor is entering into this Agreement not only in consideration of the Royalties to be paid hereunder but also for the promotional value to be secured by Licensor for the Artwork Property and the Trademarks as a result of the Sale of  the Products by Licensee; and (ii) its failure to manufacture, sell, advertise or promote less than substantially all of  the Products items and categories which Licensee has agreed to make for sale within a reasonable period or accordance with the provisions of this Agreement or to fulfill any of  Licensee's other obligations hereunder will result in immediate termination all rights shall  revert to X one X movie archive or  it's designees . In consideration that a particular image, artwork, design should fail in the marketplace the licensee can discontinue it's marketing efforts by individual design and or substitute a new artwork by request to Licensor. The Licensee shall submit within 60days, which specific products, which it intends, produce during the term of the agreement.

## 10. TRADEMARKS, PATENT AND COPYRIGHT PROTECTION:

(a)  The License granted hereunder is conditioned upon Licensee's compliance with applicable Provisions of the trademark patent and copyright laws of the United States and each foreign country in the Territory.  Licensee shall keep records of and advise Licensor when each of the Products is first sold in each country in the Territory. Compliance shall mean only to forward evidence of sale to each state or country at the end of term of agreement.

(b)  Licensee shall cooperate with Licensor in protecting and defending the private Movie Archive and it's Artwork including the execution of any documents as requested by Licensor.  If any claim or problem arises with respect to the protection of the Artwork Property or the Trademarks in the Territory, Licensee shall promptly advise Licensor in writing of the nature and extent of same.  Licensor shall have the right but not the obligation to take any action whatsoever, with counsel of its own choice, if any claim or problem arises with respect to the protection of the Artwork Property or the Trademarks.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____John F. Walter_____ and the assigned Magistrate Judge is _____Carla Woehrle_____.

The case number on all documents filed with the Court should read as follows:

## 2:13CV8574 JFW CWx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

| | |
|---|---|
| November 20, 2013 | By   J.Prado |
| Date | Deputy Clerk |

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

(e) Licensee shall use no markings, legends and notices on or in association with the Products or Promotional and Packaging Material other than the above specified legend and such other markings, legends and notices as may from time to time be specified by Licensor without first obtaining Licensor prior written approval.  Licensee hereby represents and undertakes that it will not at any time without Licensor prior written consent assign, sub-license, sub-contract or otherwise deal with all or any part of the rights hereby granted or amend, revise, develop, or vary all or any part of the Property. (ii) If Licensee shall with or without the prior written consent of Licensor create or acquire derivative designs, whether amendments, revisions, developments or variations of all or any part of the Property (hereinafter called the "Derived Further Designs") (without prejudice to Licensor rights against the Licensee in the event of the unauthorized creation of any Derived Further Design) Licensor or its designee shall automatically acquire (and Licensee shall execute such assignments or other documents as Licensor may request) all rights of every kind, nature and description (including without limitation the entire copyrights throughout the world and all extensions thereof) in and to all such Derived Further Designs and the Licensee does hereby agree and undertake:  Prior to the creation or acquisition of any Derived Further Design in accordance with Section 6 (f) (1) to obtain from the proposed draftsman, artist, designer or the creator of the Derived Further Design or the Person to whom in law or in fact the rights in the Derived Further Design shall belong a written absolute sale and assignment of all of that person's rights whether present or future in the Derived Further Design in favor of Licensor.

(f) (1) The Derived Further Design shall at all times both before and after approval by Licensor be Licensor sole and exclusive property.

(a) Upon commencement of manufacture, shipment and distribution of the Products or Promotional and Packaging Material after all required approvals have been given by Licensor, Licensee shall submit, at its own cost, the number of aforementioned Production Samples of the Products and Promotional and Packaging Material set forth in the basic provisions to Licensor.   Licensee shall provide 5 samples of each production run.

(b) Licensor may periodically during the Term, require that Licensee submit to Licensor, at no cost to Licensor, additional sets of Production Samples of the products and Promotional and Packaging Material as reasonably requested by Licensor to enable Licensor to review continued compliance by Licensee with the requirements of this Agreement.

(c) Licensee shall not depart from approved production Samples in any respect without the prior written approval of Licensor.  Licensee shall make submissions to Licensor and obtain approvals in the manner required above each time new revised concept, layout, descriptions, artwork, models, prototype samples or Production Samples are created or developed.

(c) Licensee shall not any time apply for any copyright, trademark or patent protection nor file any document with any governmental authority nor take any other action, which could affect Licensor rights in the Property or the Trademarks.

## 11. INFRINGEMENTS:

(a) Licensee shall assist Licensor in the enforcement of any rights of Licensor in the Property or the Trademarks. Licensor may commence or prosecute any claims or suits in its own name or in the name of Licensee or join Licensee as a party thereto. Licensee shall notify Licensor in writing of any infringements or imitations by third parties of the Property, the Trademarks, the Products or the Promotional and Packaging Material, which may come to the Licensee's attention. Licensor shall have sole right to determine whether or not any action shall be taken on account of any such infringement or imitation. Licensee shall not contact the third party, nor make any demands or claims, nor institute any suit nor take any other action on account of such infringements or imitations without first obtaining the prior written permission of Licensor. All costs and expenses, including attorney's fees incurred in connection with any suit instituted by Licensee without the consent of Licensor shall be borne solely by Licensee.

(b) With respect to all claims and suits, including suits in which Licensee is joined as a party, Licensor shall have the sole right to employ counsel of its choice and to control the litigation and any settlement thereof. Licensor and Licensee shall be both entitled to receive and retain all amounts awarded as damages profits or otherwise in connection with such suits after all legal costs have first been satisfied, both shall agree to terms in fair and reasonable manner according to amount recovered.

(c) X one X Movie Archive agrees to indemnify, defend and hold Licensee harmless from liabilities, third party claims, causes of action, judgments, damages, losses and expenses (including reasonable attorney's fees) arising out of any breach of Licensors representations, warranties or obligations under this agreement during the term of this agreement. This subsection shall not survive the expiration or termination of this Agreement for a period not longer than 60 days after the final royalty statement. In regards to legal notices by third parties to manufactures, suppliers, distributors and retailers these legal notices must be forwarded within 10 business days from receipt. Failure to remit within the said period to Licensor will null and void any indemnification or promise made within this agreement. "Time is of the essence", on all notices which must be sent by following means by mail certified overnight, email, fax. And most importantly by telephone communication within five business days. Licensor promises to defend licensee against any and all such actions and must have the legal opportunity to do so within 15 days from initial mailing. Failure to comply may cause legal rights to be lost and cause unnecessary costs and procedures to recover those rights, which the Licensee will be responsible for.

## 12. INSURANCE:

Licensee shall, throughout the Term obtain and maintain at its own cost from a qualified insurance company licensed to do business in the State of California, separate policies for (i) standard Product Liability Insurance; and (ii) Advertisers' Liability Insurance, the form of which must be acceptable to Licensor, naming Licensor as an additional named insured. The Product Liability Insurance policy shall provide protection against all claims, demands and causes of action arising out of any defects or failure to perform, alleged or otherwise, of the Products or any material used in connection therewith or any use thereof. The amount of coverage under each policy shall be a minimum of One Million Dollars ($1,000.000) combined single limit, with no deductible amount, for each single occurrence for bodily injury and/or for property damage. Each policy shall provide for "ten" (10) day's notice to Licensor from the insurer by Registered or Certified Mail, return receipt requested of any modification, cancellation or termination. Licensee shall furnish to Licensor a certificate of insurance evidencing same within thirty (30) days after execution of the Agreement and, in no event, shall the Licensee manufacture, offer for sale, sell, advertise, promote, ship or distribute the Products prior to receipt by Licensor of such evidence of insurance.

## 13. EXPLOITATION BY LICENSEE:

(a)   Licensee shall commence the " substantially all of the products specified in Section 9.(c)". in commercially reasonable quantities within an eight-month period.

(b)  During the entire Term, Licensee will use reasonable good faith efforts to diligently and continuously to distribute, ship, sell, promote and meet the demand for all of the Products of Licensee current markets, which include U.S.A, of the individual artworks which are successful. Licensee shall have opportunity to refresh its line and add new designs and curtail efforts that have no longer become economically feasible in those particular markets. In any case no selection or product category, artwork , design  shall be unreasonable withheld by Licensee.

(c) Products will be sold, shipped and distributed outright, at a competitive price that does not exceed the price generally and customarily charged the particular purchaser by the Licensee, and not on an approval, consignment, sale or return basis. Licensee will not discriminate against the Products by granting commissions/discounts to salesmen, dealers or distributors in favor of Licensee's other products.  Products will only be sold to retail stores and merchants for sale, shipment and distribution direct to the public.

## 14. PREMIUMS, PROMOTIONS AND SECONDS:

(a) Licensor reserves the sole and exclusive right to utilize or license third parties to utilize any Product in connection with any premium, giveaway, mail order, in-theater sales, promotional arrangement or fan club (collectively referred to as "Promotional Products"), which retained right may be exercised by Licensor concurrently with the rights licensed to the Licensee hereunder.

(b) Licensee shall not sell, ship, advertise, promote, distribute or use for any purpose whatsoever (or permit anyone else to do so) any Products or Promotional and Packaging Materials which fail to meet public safety standards and or the proper specifications trademark, patent and copyright usage and notice requirements of this Agreement. The Licensee shall notify Licensor in writing of intent to liquidate or destroy merchandise. Licensee shall also forward samples describing the problem.

## 15. ASSIGNABILITY AN SUBLICENSING:

(a) The License granted hereunder is and shall be personal to Licensee and shall not be Assigned by any act of Licensee or by operation of law. Licensee shall not have the Products manufactured by a third party unless Licensee first obtains Licensor prior written approval. Licensee shall have no right to grant any sublicenses without Licensor prior written approval. Any attempt by Licensee to arrange for manufacture by a third party or sublicense or assign to third parties it rights under this Agreement shall be null and void and shall constitute a material breach of this Agreement. Any and all such intentions shall be discussed with Licensor.

(b) Licensor shall have the right to assign its rights and obligations under this Agreement without Licensee's approval.

## 16. TERMINATION:

In addition to any other rights Licensor may have hereunder, at law or equity:

(a) Licensor shall have the right to terminate this entire Agreement by giving written notice to Licensee, if Licensee: (i) manufactures, sells, advertises, promotes, ships, distributes or uses in any way any Product or Promotional and Packaging Material without having the prior written approval of Licensor as provided for hereunder or after receipt of notice from Licensor disapproving or withdrawing approval of same; (ii) or any of its controlling shareholders, officers, directors or employees take any action in connection with the manufacture, sale, advertising, promotion, and shipment or distribution of the Products or the Promotional and Packaging Material which damages or reflects adversely upon Licensor the Artist , Artwork Property or the Trademark; (iii) Breaches any of the provisions of this Agreement relating to the unauthorized assertion of rights in the Artwork Property or the Trademarks; (iv) fails to make timely payment of Royalties or any other payments to Licensor when due: (v) breaches any of the provisions of this Agreement prohibiting Licensee from arranging for manufacture by third parties, assigning, transferring, sublicensing or otherwise encumbering this Agreement or any of its rights or obligations hereunder; or (vi) fails to obtain or maintain product liability and advertising insurance as required by the provision of this Agreement. (vii) Files a petition in bankruptcy, or a petition is filed against Licensee which is not dismissed within thirty (30) days, or is adjudicated a bankruptcy or insolvent, or makes an assignment for the benefit of creditors, or an arrangement pursuant to any bankruptcy law, or if Licensee discontinues its business, or if a receiver is appointed for the Licensee or for the Licensee's business and such receiver is not discharged within thirty (30) days.

41

"Notwithstanding" the above X one X Movie Archive's rights to terminate this Agreement shall be subject to Licensee's right to have 60 days following receipt of written notice from X one X Movie Archive setting forth the reason for termination to correct or cure such reason for termination.

(b) Licensor shall have the right to terminate this Agreement upon thirty (30) days written notice to Licensee in the following events, provided that during the thirty (30) day period, Licensee fails to cure the breach: (i) if Licensee shall breach or violate any of its obligations under this Agreement other than those covered in (a) or (b) above; or (ii) if Licensee becomes subject to any voluntary or involuntary order of any governmental Agency involving the recall of any of the Products and/or Promotional and Packaging Material because of safety, health or other hazards of risks to the public.

## 17.  POST-TERMINATION AND EXPIRATION RIGHTS AND OBLIGATIONS:

After the expiration or termination of the Term:

(a) Licensee shall have no right to manufacture, offer, sell, ship, advertise, promote and Distribute, use or deal with in any way Products or Promotional and Packaging Material except as provided in subsection (c) below.

(b) In the event of early termination, notwithstanding Anything to the contrary herein, all unpaid Royalties and any Advance of each option period or Guaranteed Minimum Royalty which would be payable if the Term had continued shall nevertheless be payable in full upon termination of the Term. All payments are due in the event of early termination.

(c) Except upon expiration or termination of the Term Pursuant to Section 16 above, Licensee may dispose of all Products which are on hand or in the process of manufacture at the time notice of termination is received or upon the expiration of the then in effect Term for a period of ninety (90) days after notice of termination or such expiration, as the case may be, provided that the Advances and Royalties with respect to that period are paid and the appropriate statements are furnished for that period.  During such ninety (90) day period, X one X may itself use or license the use of the Property and/or the Trademarks in any manner at any time anywhere in the world as X one X sees fit.

(d) All rights granted to Licensee shall forthwith revert to Licensor which shall be free to license others to use the Property and the Trademarks in any manner.  At X one X election and in its sole discretion Licensee shall either (i) turn over to Licensor all molds and other materials which reproduce the Products or Promotional and related Packaging Material or (ii) cause the molds and such other materials to be destroyed and provide Licensor with satisfactory evidence of their destruction.  Licensee shall be responsible to Licensor for any damages caused by the unauthorized use by the Licensee or by others of such molds or reproduction materials, which are not so turned over to Licensor or destroyed.

## 18.  FINAL INVENTORY UPON TERMINATION OR EXPIRATION:

Within thirty (30) days after the end of the Term, Licensee shall deliver to Licensor a statement indicating the number and description of the Products on hand or in the process of manufacturing at the end of the Term.  Licensor shall have the option of conducting a physical inventory at any time after the end of the Term in order to ascertain or verify such statement. If Licensee refuses to permit Licensor to conduct such physical inventory then without limiting any of Licensor other remedies, Licensee shall forfeit its rights hereunder to dispose of such inventory.

## 19.  NOTICES:

All notices or other communications to either party shall be in writing and sent by mail, telex, cable or personal delivery to such party's address listed in the heading of this Agreement. either party may change its address by notice in writing to the other. All notices shall be directed to Mark Rogison, President of "Sign of the Times". All notices shall be directed to Leo Valencia, President of X one X Movie Archive.

## 20.  RELATIONSHIP OF THE PARTIES:

This Agreement does not create a partnership or joint venture between the parties and Licensee shall have not power to obligate or bind Licensor in any manner whatsoever.

## 21.  APPLICABLE LAW AND DISPUTES:

Any claims arising hereunder or relating hereto shall be appointed to appropriate court at discretion of X one X Movie Archive.  The parties consent to the personal jurisdiction of such courts and to the service of process by mail.  The legal jurisdiction shall be U.S. court of law in the western district either in state of Nevada.

## 22.  CAPTIONS:

Section captions are inserted only for convenience.   Such captions shall not be given any substantive or legal effect.

## 23.  WAIVERS:

(a)  No waiver by either party of a breach or default hereunder shall be deemed a waiver of any other breach or default

(b)  All of Licensor rights and remedies hereunder or at law or in equity shall be cumulative and resort to one shall not be construed as a waiver of any other.

### 24. SURVIVAL OF RIGHTS:

Notwithstanding anything to the contrary contained herein, any obligations, which remain executory after expiration of the Term of this Agreement, shall remain in full force and effect until discharged by performance and such rights as pertain thereto shall remain in full force until their expiration.

### 25. SEVERABLITY:

If any provision of this Agreement shall for any reason be held invalid, illegal or unenforceable it shall not affect the validity of this Agreement or any other provision hereof and this Agreement shall be interpreted and construed as if such provision, to the extent invalid, illegal or unenforceable, had not been contained herein.

### 26. INTEGRATION:

This Agreement: (i) represents the parties' entire understanding and supersedes all previous representations, understandings or agreements, oral or written, between them with respect to the subject matter hereof; and (ii) cannot be modified except by a written instrument signed by the parties hereto.

### 27. NON-DISCLOSURE:

"X one X Movie Archive," acknowledges that during the term of this agreement Licensor will have access to an become acquainted with the information of confidential, proprietary and secret nature belonging to or pertaining to Licensee's business or it's customers or their business. Licensor hereby covenants and agrees not to directly or indirectly use, make known or otherwise disclose to any person or entity for any purpose whatsoever, except as required to permit Licensor to perform its obligations under this agreement, any information regarding or pertaining to Licensee's business or its customers or their businesses.

_____
Leo Valencia
Title: President
Date:_____

_____
Mark Rogison
Title: President,
Date:_____

**Crystal Art**

Mark Rodison
President

3850 East Vernon Street
Vernon California
Tel 323-581-6611 Fax 323-581-7004

## SCHEDULE A

### Quarterly Royalty schedule, see agreement B3

| TITLE SELECTION | Sku No | Date of Amendment | |
|---|---|---|---|
| 1 Rio Grande | | renewal 3-26-02 | expire 3-26-04 |
| 2 King of the Pecos | | renewal 3-26-02 | expire 3-26-04 |
| 3 Oceans 11 | | renewal 3-26-02 | expire 3-26-04 |
| 4 Per Qualce Dollaro in Piu | | renewal 3-26-02 | expire 3-26-04 |
| 5 The day earth stood still | | renewal 3-26-02 | expire 3-26-04 |
| 6 Creature from Black Lagoon | | renewal 3-26-02 | expire 3-26-04 |
| 7 Join The Navy | | renewal 3-26-02 | expire 3-26-04 |
| 8 King Kong 1# | | renewal 3-26-02 | expire 3-26-04 |
| 9 The Invisible man returns | | renewal 3-26-02 | expire 3-26-04 |
| 10 A Haunting we will go | | renewal 3-26-02 | expire 3-26-04 |
| 11 Duck Soup | | renewal 3-26-02 | expire 3-26-04 |
| 12 Mysterious Lady | | renewal 3-26-02 | expire 3-26-04 |
| 13 Taxi Driver | | renewal 3-26-02 | expire 3-26-04 |
| 14 Hondo | | renewal 3-26-02 | expire 3-26-04 |
| 15 Snow White | | renewal 3-26-02 | expire 3-26-04 |
| 16 Tee For Two | | renewal 3-26-02 | expire 3-26-04 |
| 16 | | | |
| 16 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |

I Certify the information provided above is accurate and meets the terms of our licensing agreement with X ONE X Movie Archive Inc. 2533 N. Carson Street Suite S049 Carson City, NV 89706

# Exhibit D



# Metal Signs

## Personalities / Characters / Media

### Elvis


Elvis Pink Caddy
98293


Elvis at the Fox
10021


The Personal Elvis
10022


Elvis-King Of Rock n' Roll
98339


I LOVE Elvis
98340


Elvis Happens In Vegas
98399

### Betty Boop


Boop Surf Shop
10024


Boop Cafe
94536


Boop Motorcycle
94535


Creature from the Black Lagoon
98950


Invisible Man
98951


James Dean Dream
98207

# Exhibit E

# INVOICE

SIGN OF THE TIMES

Tel(323) 826-9766 Fax  (323) 581-2323

```
********************************************
** PLEASE REMIT PAYMENT TO:**
** DEPT CH 16738          **
** PALATINE, IL 60055-6738 **
********************************************
```

| Invoice No. | Page |
|---|---|
| **103340** | 1 |
| **Invoice Date** | |
| **May 31, 2013** | |
| **Total Amount** | |
| **130.88** | |

**B I L L  T O**
X - FACTOR
2647 GATEWAY RD.,STE.#105-550
CARLSBAD, CA
92009

**S H I P  T O**
X - FACTOR
2647 GATEWAY RD.,STE.#105-550
CARLSBAD, CA
92009

| Order No. | Order Date | Cust. No. | SP | PO No. | Ship Via | Ship Date | Terms |
|---|---|---|---|---|---|---|---|
| **35006** | **06/14/13** | ***MISCC** | **SRA** | **061413X-FACT** | **FEDEX GROUND** | **05/31/2013** | **CREDIT** |

| Qty Order | U/M | Qty Ship | Item No. | Description | Unit Price | Extended Price |
|---|---|---|---|---|---|---|
| | | | | *** ADD FREIGHT TO INVOICE *** MR | | |
| | | | | *** METAL SIGNS *** POLYBAGGED *** | | |
| 10 | EA | 10 | 98410- | AUDREY MOVIE ONE SHEET | 4.00 | 40.00 |
| 10 | ea | 10 | 98409- | Breakfast at Tiffany's-Audrey | 4.00 | 40.00 |
| 10 | EA | 10 | 98951- | INVISIBLE MAN METAL SIGN | 4.00 | 40.00 |
| 10 | EA | 0 | 98950- | CREATURE FROM THE BLACK LAGOON METL SGN | 4.00 | 0.00 |

**COMMENTS:**
*LA SHIP*
*TRACKING #016477950171769*

| | |
|---|---|
| Sales Amount | $120.00 |
| Misc Charges | $10.88 |
| Sales Tax | $0.00 |
| ***Total*** | **$130.88** |

SALES REP

1 1/2% interest per month will be charged on all past due acounts.

49

# Exhibit F



All restored versions of authentic movie publicity artworks are property of XONE X Movie Archive and it's respected artists

**CIVIL COVER SHEET**

## I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ )

X ONE X MOVIE ARCHIVE, INC., a Nevada Cororation

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

SIGN OF THE TIMES, INC., d/b/a Crystal Art Gallery; and DOES 1-10

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Melissa W. Woo (SBN 192056)
2647 Gateway Road, Suite 105-550
Carlsbad, California 92009

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

## II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

## V. REQUESTED IN COMPLAINT: JURY DEMAND: ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** Damages & Def's Profits

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Copyright Infringement under 17 U.S.C. §501; Contributory Copyright Infringement; Vicarious Copyright Infringement; Breach of Contract; Unjust Enrichment;

## VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☒ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number:   CV13-8574

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ NO ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ NO ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Nevada | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
NOTE: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____ DATE: November 20, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____John F. Walter_____ and the assigned Magistrate Judge is _____Carla Woehrle_____ .

The case number on all documents filed with the Court should read as follows:

## 2:13CV8574 JFW CWx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____November 20, 2013_____          By  J.Prado _____
Date                                          Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] Western Division<br>312 N. Spring Street, G-8<br>Los Angeles, CA 90012 | [ ] Southern Division<br>411 West Fourth St., Ste 1053<br>Santa Ana, CA 92701 | [ ] Eastern Division<br>3470 Twelfth Street, Room 134<br>Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

Name & Address:

MELISSA W. WOO (SBN 192056)
E-Mail: melissaw@counselatlaws.com
2647 Gateway Road, Suite 105-550
Carlsbad, California 92009

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| X ONE X MOVIE ARCHIVE, INC., a Nevada Corporation, <br><br> PLAINTIFF(S) <br><br> v. <br><br> SIGN OF THE TIMES, INC., d/b/a CRYSTAL ART GALLERY; and DOES 1-10, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> CV13-8574 JFW (Wx) <br><br><br> **SUMMONS** |

TO:    DEFENDANT(S):

       A lawsuit has been filed against you.

       Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Melissa W. Woo_____, whose address is _2647 Gateway Road, Suite 105-550, Carlsbad, California 92009_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _NOV 2 0 2013_____

By: _____
       Deputy Clerk

       (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11                                   SUMMONS

Name & Address:

MELISSA W. WOO (SBN 192056)
E-Mail: melissaw@counselatlaws.com
2647 Gateway Road, Suite 105-550
Carlsbad, California 92009

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| X ONE X MOVIE ARCHIVE, INC., a Nevada Corporation,<br><br><div align="right">PLAINTIFF(S)</div><br>v.<br><br>SIGN OF THE TIMES, INC., d/b/a CRYSTAL ART GALLERY; and DOES 1-10,<br><br><div align="right">DEFENDANT(S).</div> | CASE NUMBER<br><br>**CV13-8574** JFW(CWx)<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Melissa W. Woo_____, whose address is _2647 Gateway Road, Suite 105-550, Carlsbad, California 92009_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

NOV 2 0 2013

Clerk, U.S. District Court

**JULIE PRADO**

Dated: _____

By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*